DECISION
{¶ 1} In this original action, relator, Sally McCoy, seeks the issuance of a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate its order which denied relator wage loss compensation and ordering the commission to issue an order finding relator is entitled to such compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and App.R. 12(M) of the Tenth Appellate District, this case was referred to a magistrate to conduct appropriate proceedings. The magistrate has issued a decision, including findings of fact and conclusions of law recommending that a writ of mandamus issue ordering the commission to determine when the respondent-employer became dissatisfied with relator's efforts to seek employment and if and when relator refused vocational assistance or otherwise failed to make a good-faith effort to secure suitable employment. (Attached as Appendix A.) Additionally, the magistrate recommends that upon remand, the commission may determine that the employer wrongfully terminated wage loss compensation and can still find that relator is entitled to such compensation for the period involved. Thus, the magistrate recommends this court issue a writ of mandamus ordering the commission to vacate its prior order terminating relator's wage loss compensation and to further consider the matter and determine relator's entitlement to wage loss compensation.
 {¶ 3} Relator sustained a work-related injury on March 13, 1996, and her claim was allowed for "bilateral sprain of wrist; bilateral wrist tendonitis." Although relator returned to restricted employment with respondent-employer, as of September 10, 2001, relator was laid-off.
 {¶ 4} In March 2002, relator began employment as a cashier at a gas station earning $5.15 per hour, and by letter dated May 1, 2002, relator's employer determined that wage loss compensation would be paid to relator with the following warning:
It is my understanding that Ms. McCoy is still pursuing a job search with a job more in line with her previous employment that would be within her restrictions. The employer does understand the job situation in her area, but there are many manufacturing facilities in Marion and the enjoining counties that have positions within her restrictions. The employer encourages her to continue this job search other than a minimum wage position.
 {¶ 5} Although a specific date is uncertain, the respondent-employer eventually became dissatisfied with relator's job search efforts and terminated relator's wage loss compensation.
 {¶ 6} Relator subsequently made efforts through a complaint filed with the Bureau of Workers' Compensation ("BWC"), and a motion filed with the commission challenging the denial of wage loss compensation. Relator's complaint was eventually heard before a district hearing officer ("DHO") in August 2002, and the hearing resulted in an order granting relator's request for compensation as follows:
The District Hearing Officer finds that the injured worker's employment activities as a cashier with Duke/BP Oil for the period from March 16, 2002 through July 24, 2002 and the injured worker's employment activities as a toe motor operator with Sypris Technologies from July 25, 2002 forward and continue to be within the 35 pound lifting restriction associated with the allowed conditions recognized in this 3/13/1996 industrial injury claim. The district hearing officer finds the above noted employment with Duke/BP Oil and Sypris Technologies constitutes suitable comparably paying work as required by Ohio Adm. Code 4125-1-01.
 {¶ 7} In addition to the recognition by the DHO of relator's entitlement to wage loss compensation, a letter issued from the BWC's self-insured claim services in September 2002, informed respondent-employer that relator's complaint had merit and ordered respondent-employer to resume payment of wage loss compensation.
 {¶ 8} Upon subsequent appeal by the respondent-employer, the parties agree that the only period of wage loss in dispute was from March 16, 2002 through July 24, 2002, the time when relator was employed as a cashier at the gas station. The SHO, on appeal, denied that period of wage loss compensation, giving rise to a further appeal which was denied and thereafter, this action in mandamus was filed.
 {¶ 9} As correctly alluded to in the magistrate's decision, the relator by this mandamus action contends the commission abused its discretion by terminating her wage loss compensation. This contention arises from the record indicating the respondent-employer had previously determined relator's entitlement to wage loss compensation and that a conflict existed between an order from the self-insured department and the commission relating to relator's eligibility for such compensation.
 {¶ 10} While it is clear that the respondent-employer became dissatisfied with relator's efforts and later concluded she was no longer entitled to receive working wage loss compensation, the record is unclear as to exactly when this occurred. The magistrate, based upon the record before the commission, found that relator had returned to work as of March 16, 2002 and that she was entitled to working wage loss compensation. The denial of compensation at some later date resulted in an abuse of discretion since there was evidence that respondent-employer was originally satisfied with relator's efforts as far as seeking employment and receiving wage loss compensation. Thus, we agree with the general findings of fact and conclusions of law entered by the magistrate.
 {¶ 11} Only the respondent-employer has filed objections to the magistrate's decision. Respondent's first objection is overruled as this issue is adequately addressed in the briefs of the parties and discussed thoroughly in the magistrate's decision. The second objection of the respondent-employer to the magistrate's decision is overruled as the magistrate did not conclude that the commission lacked jurisdiction to terminate relator's wage loss compensation. The major issue here is the timing of the termination and the basis for such termination in view of the conceded earlier entitlement to wage loss compensation by the respondent-employer. Respondent's third and fourth objections to the magistrate's decision are overruled, as neither objection, if factually accepted, would alter the procedural basis for our consideration of relator's ultimate request for relief by way of mandamus. Thus, respondent's objections to the magistrate's decision are overruled.
 {¶ 12} Based upon an independent review of the file and Civ.R. 53, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law. Therefore, a writ of mandamus will issue ordering the respondent-commission to vacate its prior order terminating relator's wage loss compensation and, upon remand, reconsider the matter and determine relator's entitlement to wage loss compensation.
Objections overruled; writ of mandamus granted.
PETREE and SADLER, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 IN MANDAMUS {¶ 13} Relator, Sally McCoy, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator wage loss compensation and ordering the commission to issue an order finding that relator is entitled to that compensation.
Findings of Fact:
 {¶ 14} 1. Relator sustained a work-related injury on March 13 1996, and her claim has been allowed for: "bilateral sprain of wrist; bilateral wrist tendonitis."
 {¶ 15} 2. Relator has permanent restrictions which prevent her from returning to her former position of employment.
 {¶ 16} 3. At some point relator returned to restricted work with her employer; however, as of September 10, 2001, relator was laid off.
 {¶ 17} 4. Beginning March 16, 2002, relator began employment as a cashier at a gas station earning $5.15 per hour.
 {¶ 18} 5. By letter dated May 1, 2002, relator's employer determined that wage loss compensation would be paid to relator with the following caveat:
 {¶ 19} "It is my understanding that Ms. McCoy is still pursuing a job search with a job more in line with her previous employment that would be within her restrictions. The employer does understand the job situation in her area, but there are many manufacturing facilities in Marion and the adjoining counties that have positions within her restrictions. The employer encourages her to continue this job search for something other than a minimum wage position."
 {¶ 20} 6. The record indicates that the employer became dissatisfied with relator's continued job search and unilaterally terminated relator's wage loss compen-sation. Specifically, in a letter dated June 14, 2002, counsel for the employer notified relator's counsel as follows:
I have been forwarded the wage information for Ms. McCoy in the above-captioned claim. A review of the wage information indicates that the claimant is employed at a minimum wage job working part-time hours. Pursuant to the Ohio Administrative Code section governing wage loss, the claimant must continue to search for positions providing the same hours at the same rate of compensation she was being paid at the time of her injury. Please forward that information to my attention or to Ms. Vicky Hardie at GAB Robins at your earliest convenience.
 {¶ 21} 7. On July 23, 2002, relator filed a complaint with the Ohio Bureau of Workers' Compensation ("BWC") because the employer had unilaterally terminated her wage loss compensation without a hearing.
 {¶ 22} 8. On July 25, 2002, relator filed a motion with the commission requesting a hearing on the issue of wage loss compensation.
 {¶ 23} 9. By letter dated August 29, 2002, John Finnegan, the vocational case manager assigned to work with relator to help her become employed at a better and higher paying job, notified counsel for the employer as follows:
In view of the fact that Ms. McCoy has an Associates Degree, along with a semi-skilled to skilled employment history, she is a good candidate for higher paying positions within the local labor market. In addition, she has supervisory experience, which enables her to access these types of positions and/or to advance more quickly. It is my opinion that based upon her relevant work history and education, if Ms. McCoy did continue in her job search efforts she would be a good candidate for higher paying positions. Unfortunately, she refused on advice from her attorney, to engage in continued job search efforts.
 {¶ 24} 10. Relator's complaint was heard before a district hearing officer ("DHO") on August 28, 2002, and resulted in an order granting relator's request for compensation as follows:
The District Hearing Officer finds that the injured worker's employment activities as a cashier with Duke/BP Oil for the period from 3/16/2002 through 7/24/2002 and the injured worker's employment activities as a tow motor operator with Sypris Technologies from 7/25/2002 forward were and continue to be within the 35 pound lifting restriction associated with the allowed conditions recognized in this 3/13/1996 industrial injury claim.
The District Hearing Officer finds that the above noted employment with Duke/BP Oil and Sypris Technologies constitute suitable comparably paying work as required by OAC 4125-1-01.
The District Hearing Officer specifically rejects the employer's argument that the injured worker was self-limiting her hours of employment with Duke/BP Oil or that she was allegedly working part time. The District Hearing Officer finds that the wage records on file indicate that the claimant was working close to a 40 hours per week. The District Hearing Officer finds the injured worker's testimony at hearing to be credible and persuasive in her recollection that she made herself available and willing to work at least 40 hours per week while employed with Duke/BP Oil.
Based upon the foregoing, the District Hearing Officer grants the injured worker's request for working wage loss compensation for the period from approximately 4/16/2002 through the present and continuing upon submission of evidence supporting ongoing diminishment in wages due to restrictions imposed upon her by the allowed conditions recognized in this 3/13/1996 workplace injury claim.
 {¶ 25} 11. By letter dated September 30, 2002, the BWC Self-Insured Claims Services informed the employer that relator's complaint had merit and ordered the employer to resume payment of wage loss compensation to relator.
 {¶ 26} 12. The employer appealed from the August 28, 2002 DHO order and the matter was heard before a staff hearing officer ("SHO") on November 4, 2002. The SHO found that, at the hearing, the parties agreed that the only period of wage loss in dispute was from March 16, 2002 through July 24 2002, the time when relator was employed as a cashier at the gas station. The SHO denied that period of wage loss compensation for the following reasons:
The Staff Hearing Officer finds that working wage loss is denied during that period from 03/16/2002 through 07/24/2002 based on OAC rule4125-1-01(D)(1) (V)(b)(Vii). That portion of the rule requires consideration of `any refusal by the claimant to accept the assistance, where such assistance is rendered free of charge to the claimant, of any public or private employment agency or the assistance of the employer of record in finding employment.
While employed at Duke/BP Oil the employer of record sent John Finnegan, a vocational counselor, to help the claimant obtain a higher paying job more commensurate with her abilities and experience. She met with him only once and refused his help because she didn't want to bother filling out forms to keep track of her job efforts. This is based on testimony at hearing.
 {¶ 27} 13. Relator's appeal was refused by order of the commission mailed November 16, 2002.
 {¶ 28} 14. Relator's request for further appeal was refused by order of the commission mailed November 22, 2002.
 {¶ 29} 15. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 30} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 31} Entitlement to wage loss compensation is governed by R.C. 4123.56(B), which provides as follows:
Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than the employee's former position of employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, the employee shall receive compensation at sixty-six and two-thirds per cent of the employee's weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks.
 {¶ 32} In order to receive workers' compensation, a claimant must show not only that a work-related injury arose out of and in the course of employment, but, also, that a direct and proximate causal relationship exists between the injury and the harm or disability. State ex rel. Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452. This principle is equally applicable to claims for wage loss compensation. State ex rel. The Andersons v. Indus. Comm. (1992), 64 Ohio St.3d 539. As noted by the court in State ex rel. Watts v. Schottenstein Stores Corp. (1993),68 Ohio St.3d 118, a wage loss claim has two components: a reduction in wages and a causal relationship between the allowed condition and the allowed wage loss.
 {¶ 33} In this mandamus action, relator contends that the commission abused its discretion by terminating her wage loss compensation. Relator contends the following: (1) the self-insured employer already determined that wage loss was properly payable as of May 1, 2002; (2) a conflict exists between an order from the self-insured department and the order of the commission; and (3) the commission abused its discretion by denying wage loss compensation based upon relator's failure to accept assistance from a vocational counselor.
 {¶ 34} A claimant is solely responsible for and bears the burden of producing evidence regarding entitlement to wage loss compensation. Unless the claimant meets this burden, wage loss compensation shall be denied. Pursuant to Ohio Adm. Code 4125-1-01(D), in considering a claimant's eligibility for wage loss compensation, the adjudicator shall give consideration to, and base their determination on, evidence in the file or presented at hearing, relating to the following: (1) claimant's search for suitable employment which is comparably paying work; (2) claimant's failure to accept a good-faith offer of suitable employment; and (3) other actions of claimant which constitute voluntarily limiting income from employment. With regard to claimant's search for suitable employment which is comparably paying work, the commission can consider any refusal by a claimant to accept assistance where such assistance is rendered free of charge to claimant in finding employment.
 {¶ 35} In the present case, the commission found that relator was not entitled to wage loss compensation because she refused the assistance of John Finnegan, a vocational counselor, to help her obtain a higher paying job more commensurate with her abilities and experience. The record in the present case indicates that it was through the earlier help of Mr. Finnegan that relator was able to secure the job at the gas station in the first instance. Based upon relator obtaining this employment, her employer concluded that she had found employment and was entitled to receive working wage loss compensation. As such, the employer originally agreed to begin paying her working wage loss compensation from March 16, 2002 on, provided that relator continue to search for suitable employment which is comparably paying work.
 {¶ 36} Although it is not certain at what point the employer became dissatisfied with relator's attempts to secure a higher paying job, some time between May 1, 2002, when the employer determined that relator was entitled to wage loss compensation, and July 23, 2002, when the claimant filed a complaint because the employer had terminated wage loss compensation, the employer became dissatisfied with relator's efforts and concluded that she was no longer entitled to receive working wage loss compensation. Unfortunately, the record is unclear exactly when this occurred. However, the record is clear that as of May 1, 2002, the employer was satisfied that relator had indeed returned to work as of March 16, 2002, and that she was entitled to receive working wage loss compensation. As such, this magistrate finds that the commission did indeed abuse its discretion in determining that relator was not entitled to working wage loss compensation from March 16, 2002 on because there is evidence that the employer was originally satisfied with relator's return to work. The commission did not address the fact that the employer originally paid relator working wage loss compensation. Although counsel for the employer argues that it was never satisfied with relator's job search, the commission did not address the issue of whether relator made a good-faith effort to secure suitable employment after she secured the job at the gas station.
 {¶ 37} However, the record is clear that at some point in time, after May 1, 2002, the employer, a self-insured employer, became dissatisfied with relator's efforts to secure other employment and terminated her working wage loss compensation. Relator challenged the employer's right to unilaterally terminate her wage loss compensation and filed a compliant on July 23, 2002. Apparently, relator had two "actions" pending between the BWC and the commission as evidenced by the conflicting "orders" to which relator refers. On August 28, 2002, a DHO heard relator's motion for wage loss compensation, which was filed July 25, 2002, and determined that relator was entitled to receive wage loss compensation from the date last paid from the self-insured employer, and to continue upon submission of evidence. The employer appealed from the DHO order and the matter was ultimately heard before an SHO on November 4, 2002. In the interim, by letter dated September 30, 2002, the BWC Self-Insured Claimed Services sent a letter to the employer ordering the employer to pay wage loss compensation. Thereafter, the SHO concluded that relator was not entitled to any wage loss compensation. Relator contends that the matter must be remanded to the commission because there is a conflict between what the BWC and the commission have determined. This magistrate disagrees.
 {¶ 38} Relator apparently filed two simultaneous actions, one with the BWC and one with the commission. It is incumbent upon relator, as claimant, to make the BWC and the commission aware that she had two separate actions pending. The matter filed with the commission was heard by an SHO and then further appeal was refused by the commission. Inasmuch as the commission is the ultimate authority, there is no conflict even though the BWC determined that relator was entitled to the compensation. Except for the fact that this magistrate has already found that the commission abused its discretion by determining that relator was not entitled to wage loss compensation from March 16, 2002 on, in other respects, the commission's order would take precedence over a letter from the BWC since the commission's order was determined after the parties had an opportunity to present evidence and have a full hearing.
 {¶ 39} Relator also contends that the commission could not deny her wage loss compensation because of its finding that she refused to accept the assistance of a vocational counselor. Relator contends that this is but one factor for the commission to determine.
 {¶ 40} Although relator is correct in asserting that there are several factors enumerated in the Ohio Administrative Code, the commission does not necessarily abuse its discretion by finding that relator's failure to accept assistance from a vocational specialist constitutes grounds to deny her wage loss compensation. Instead, the rule specifically provides that such a refusal would constitute grounds to terminate wage loss compensation. As such, if, on remand, the commission determines the date in which relator failed to accept any further assistance, the commission could terminate her wage loss compensation as of that date.
 {¶ 41} Based on the foregoing, this magistrate concludes that the commission did abuse its discretion in terminating relator's wage loss compensation as of March 16, 2002, inasmuch as the commission did not address the employer's determination that she was entitled to compensation at that time after having found a job. However, at some point in time, the employer became dissatisfied with relator's efforts and terminated her wage loss compensation. Upon remand, the commission needs to determine when the employer became dissatisfied with relator's efforts and, if and when, relator refused vocational assistance or otherwise failed to make a good-faith effort to secure suitable employment. Or, on remand, the commission could determine that the employer wrongfully terminated her wage loss compensation and could still find that she is entitled to that compensation. It is this magistrate's decision that this court should issue a writ of mandamus ordering the commission to vacate its prior order terminating relator's wage loss compensation and the commission should reconsider the matter and determine relator's entitlement to wage loss compensation.